THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYNTHIA STUTSMAN and MICHAEL PETERSON, for themselves and on behalf of all others similarly situated,

                              Plaintiffs,

        v.

SIRIUS XM RADIO LLC,

                              Defendant.

Case No. 2:25-cv-01113-LK

**DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE**

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD...................................................................................................... 2

ARGUMENT .................................................................................................................. 2

    I.     The injuries required for standing and the CAN-SPAM are
         distinct. .................................................................................................. 2

    II.    Plaintiffs have standing. ................................................................................ 4

         A.     CEMA elevates receipt of unwanted emails to a concrete
              harm. ........................................................................................ 4

         B.     Plaintiffs suffered a concrete injury from the receipt of
              unwanted emails.................................................................... 8

CONCLUSION............................................................................................................... 10

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – i
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Bernhardt v. County of Los Angeles,*
    279 F.3d 862 (9th Cir. 2002) ................................................................................. 2

*Brinton v. Vivint Inc.,*
    2024 WL 3688589 (W.D. Wash. Aug. 7, 2024) ................................................... 7, 9

*Chennette v. Porch.com, Inc.,*
    50 F.4th 1217 (9th Cir. 2022) ............................................................................... 6

*DeFiore v. SOC LLC,*
    85 F.4th 546 (9th Cir. 2023) ............................................................................. 2, 8

*Gordon v. Virtumundo, Inc.,*
    575 F.3d 1040 (9th Cir. 2009) .............................................................................. 3

*Hall v. Smosh Dot Com, Inc.,*
    72 F.4th 983 (9th Cir. 2023) ............................................................................. 5, 6

*Harbers v. Eddie Bauer, LLC,*
    415 F. Supp. 3d 999 (W.D. Wash. 2019) ......................................................... 7, 10

*Jones v. Ford Motor Co.,*
    85 F.4th 570 (9th Cir. 2023) ............................................................................. 3, 4

*Liss v. Skechers USA Inc.,*
    2026 WL 1392327, at *3 (W.D. Wash. May 19, 2026) ....................................... 7, 9

*Lynch v. AML Network Ltd.,*
    2021 WL 4453470 (C.D. Cal. Sept. 27, 2021) ...................................................... 8

*Montes v. Catalyst Brands LLC,*
    2025 WL 3485827 (E.D. Wash. Dec. 4, 2025) ...................................................... 8

*Nuri v. True Religion Apparel,*
    No. 25-cv-690, Doc. 56 (W.D. Wash. Mar. 30, 2026) ............................................ 3

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – ii
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

*Pileggi v. Wash. Newspaper Pub'g Co.*,
    146 F.4th 1219 (D.C. Cir. 2025) ........................................................................... 1, 5, 6

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ..................................................................................... 8

*Six v. IQ Data Int'l, Inc.*,
    129 F.4th 630 (9th Cir. 2025) ...........................................................................passim

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...................................................................................................... 4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................................ 2, 4, 5

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ................................................................................... 6

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) .............................................................................. 6, 10

*Whittaker v. Tactical USA LLC*,
    2024 WL 1855645 (E.D. Cal. Apr. 29, 2024) ........................................................... 7

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 652B .............................................................................. 5

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – iii
CASE NO. 2:25-cv-01113-LK

## INTRODUCTION

As Sirius XM's briefs in support of its motion to dismiss argued, Plaintiffs cannot rely on the narrow exception to CAN-SPAM preemption because they do not allege an injury that would be cognizable in tort. Doc. 17 at 16-19; Doc. 24 at 9-20. But that does not mean they lack an injury for purposes of Article III standing. Although the term "injury" is the same, the standards are not. The CAN-SPAM exception requires an injury that is serious enough to provide a basis for a fraud or deception claim in tort. But for standing, legislative action "can render a non-cognizable injury concrete" by elevating annoyances that could not be the basis for a tort suit "to the status of legally cognizable injuries." *Pileggi v. Wash. Newspaper Pub'g Co.*, 146 F.4th 1219, 1226-27 (D.C. Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425-26 (2021)). The Ninth Circuit has thus concluded that legislatures can elevate the receipt of a single unwanted call, text, or letter—none of which would be a cognizable injury in tort—into a concrete harm. Decisions from this District have recognized that the same is true of unsolicited emails that allegedly violate Washington's Commercial Electronic Mail Act.

Those principles apply here. Unlike in *Nuri v. True Religion*, where the plaintiff had voluntarily given True Religion her email address and alleged that she wanted to continue receiving emails from it, the complaint in this case makes clear that the emails from Sirius XM were unsolicited. Plaintiffs therefore have Article III standing, even as their allegations fail to satisfy the higher bar for injury that Congress set in CAN-SPAM's preemption exception.

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 1
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

**LEGAL STANDARD**

Because this Court raised standing *sua sponte*, the question is reviewed as if raised in a motion to remand. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). The Court must therefore accept the complaint's allegations as true and "draw all reasonable inferences in favor of the remover." *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023).

**ARGUMENT**

There is a significant gap in this case between the traditional tort injury that Plaintiffs must plead to fit into CAN-SPAM preemption's narrow exception and the concrete injury Plaintiffs must plead to establish Article III standing. Article III requires only that Plaintiffs have suffered the kind of intrusion that the Washington legislature could elevate, by analogy to the harms that intrusion upon seclusion and nuisance guard against, to a concrete harm.

## I.   The injuries required for standing and the CAN-SPAM are distinct.

While *TransUnion* rejected the notion that courts can find an injury concrete "based only on [a legislature's] say-so," it made clear that legislatures can still "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate." 594 U.S. at 425-27 (quotation marks omitted). Thus, a harm that would not qualify as an injury for purposes of a tort suit or statutory injury requirement can constitute a concrete injury in the Article III sense. CAN-SPAM's preemption exception, by contrast, requires an injury that would actually be actionable in tort. So Plaintiffs can and do have an injury in the Article III sense even as they suffered no injury in the CAN-SPAM sense.

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 2
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

*Jones v. Ford Motor Co.* illustrates the distinction. 85 F.4th 570 (9th Cir. 2023). There, the plaintiffs sought "remand based on the flawed argument that Ford 'self-rebutted the assertion of Art. III jurisdiction' when it alleged that Plaintiffs failed to plead a statutory injury under the [Washington Privacy Act] in its motion to dismiss." *Id.* at 573. The Ninth Circuit rejected that argument. *Id.* at 573-74. For purposes of "constitutional injury-in fact," the Court held that the plaintiffs had standing because "[a] statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing." *Id.* at 574 (cleaned up). But for purposes of statutory injury, the mere harm to privacy interests was not enough; Washington law required a more tangible injury. The district court therefore had jurisdiction to dismiss the claim on the merits for lack of injury.

This case is cut from the same cloth, with one added nuance. As this Court has noted, CEMA "does not require a showing of injury, so the pleading floor is *lower* to state a claim under Washington law than required by Article III." *Nuri v. True Religion Apparel*, No. 25-cv-690, Doc. 56 at 6 n.2 (W.D. Wash. Mar. 30, 2026) (quotation marks omitted). But CAN-SPAM, like the statute in *Jones*, requires "a more-demanding statutory injury," 85 F.4th at 574, by preempting all state-law claims except those alleging "traditionally tortious or wrongful conduct"—meaning conduct that causes an injury that would be actionable in tort. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1062 (9th Cir. 2009). So to state a CEMA claim that isn't preempted, Plaintiffs must allege that degree of injury, even though the lesser harm of receiving an unwanted email—elevated by the Washington legislature—satisfies

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 3
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

Article III. Their failure to do so "shows a failure to state a claim, not a failure to establish standing." *Jones*, 85 F.4th at 574.

Admittedly, and as the Court's order to show cause illustrates, Sirius XM's prior briefs could have been more precisely phrased. As *Jones* shows, injury has joined jurisdiction as "a word of many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quotation marks omitted). The statements regarding Plaintiffs' failure to show injury in Sirius XM's motion-to-dismiss brief and reply referred to the statutory injury requirement that CAN-SPAM's preemption exception imposes, which those briefs focused on, not a lack of injury for Article III purposes.

## II.   Plaintiffs have standing.

The Ninth Circuit has consistently held, across cases involving calls, texts, and mail, that legislatures can elevate the annoyance caused by unwanted commercial communications to a concrete injury in fact. In CEMA, as several decisions from this District have held, the Washington legislature did just that. And Plaintiffs' complaint makes clear that they did not invite Sirius XM's emails. So their receipt of an unsolicited email that allegedly violates CEMA is an Article III injury.

### A.  CEMA elevates receipt of unwanted emails to a concrete harm.

A legislature can elevate a harm that would not otherwise be cognizable as long as there is "a close historical or common-law analogue for" the asserted injury. *TransUnion*, 594 U.S. at 424. That is the case here. Through CEMA, the Washington legislature properly elevated the minor harm recipients of unwanted email suffer, which is similar in kind to the harms from privacy and nuisance torts, to a concrete

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 4
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

injury. So the receipt of an unwanted email in violation of CEMA is a concrete injury that provides Article III standing.

A legislatively elevated harm is a concrete injury if it is "similar in 'kind'" to a "traditionally recognized harm," even if the "degree" of harm that the plaintiff suffered is far less than the common law would require. *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) (quoting *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)). In this Circuit, that analysis focuses only on the type of harm the common-law analogue protects against, not other elements of the tort. *See id.* So it does not matter whether the *conduct* a statute regulates is traditionally tortious; as long as the statute addresses a *type of injury* recognized in common law, it can make an injury concrete. *See TransUnion*, 594 U.S. at 432 (focusing on the way in which "a person is injured"). For that reason, accidentally sending a text message to the wrong person causes a concrete injury that is analogous to intrusion upon seclusion, even though misplacing a text (or letter) is not traditionally tortious conduct. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023); Restatement (Second) of Torts § 652B (intrusion upon seclusion is an intentional tort).

Text-message cases show the extent to which legislatures "can render a traditionally non-cognizable injury concrete." *Pileggi*, 146 F.4th at 1227. If, absent legislative action, someone sought to bring an intrusion-upon-seclusion or nuisance claim because she received one text message that was meant for someone else, the case would be dismissed immediately. *See* Restatement (Second) of Torts § 652B cmt. d. ("[T]here is no liability for knocking at the plaintiff's door, or calling him to the

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 5
CASE NO. 2:25-cv-01113-LK

telephone on one occasion or even two or three, to demand payment of a debt."). But because legislatures have addressed the kind of harm those torts guard against with broader proscriptions, "[t]he owner and subscriber of [a] phone suffers a concrete, *de facto* injury when their right to be free from such communications is violated," even if the text they receive is "intended for or solicited by another individual, and even if someone else is using the phone at the time the messages are transmitted." *Hall*, 72 F.4th at 986; *see also Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022) ("Receiving even one unsolicited, automated text message" causes an Article III injury). Those cases found standing for a claim under the Telephone Consumer Protection Act, which, like CEMA, imposes strict liability without any need for a showing of reliance, injury, or intent. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041-42, 1044 (9th Cir. 2017).

That is because "the receipt of unsolicited phone calls" or texts "closely resembles traditional claims for invasions of privacy, intrusion upon seclusion, and nuisance." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022). Although the *degree* of harm the recipient of an unsolicited call or text suffers is almost certainly insufficient for her to state an intrusion upon seclusion or nuisance claim, it is the same *kind* of harm those torts guard against. *See Pileggi*, 146 F.4th at 1227. So it can be a concrete injury in fact when paired with an appropriate statute.

The Ninth Circuit has applied the same analysis to a single unwanted letter. *Six*, 129 F.4th at 634-35. Sending an unwanted letter "created the kind of 'irritating intrusion' addressed by intrusion upon seclusion." *Id.* at 634 (brackets omitted) (quoting *Gadelhak*, 950 F.3d at 462). Because the "unwanted intrusion into plaintiff's

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 6
CASE NO. 2:25-cv-01113-LK

peace and quiet … caused by an unwanted letter, [sent] in violation of [28 U.S.C.] § 1692c(a)(2), is analogous to the harm caused by intrusion upon seclusion," it qualified as a concrete injury for standing purposes. *Id.* (cleaned up).

Just as there is "no meaningful difference in this context between making a phone call and sending a letter," there is also no meaningful difference between a text, a letter, and an email. *Id.* at 634. "[R]eceiving 'spam' emails is encompassed by this analog as well." *Brinton v. Vivint Inc.*, 2024 WL 3688589, at *2 (W.D. Wash. Aug. 7, 2024). *Brinton* held that plaintiffs who alleged that they had received "unsolicited spam emails" in violation of CEMA had standing because CEMA addresses "foundational injuries to privacy and freedom from nuisance." *Id.* at *1, *3. *Liss v. Skechers USA Inc.* likewise concluded that "a violation of CEMA confers Article III standing" because "the Washington Legislature enacted CEMA with the intention of addressing unwanted e-mail messages," and the harms those messages cause "resemble the type of harms remedied by nuisance or fraud actions." 2026 WL 1392327, at *3 (W.D. Wash. May 19, 2026) (cleaned up). "Unmistakably, CEMA was enacted to protect concrete interests that have traditionally provided a basis for relief in the courts." *Id.*; *see also Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1009 (W.D. Wash. 2019) ("Ms. Harbers' allegation that she received marketing e-mails from Eddie Bauer in violation of CEMA's prohibition on sending commercial e-mails with false or misleading subject lines satisfies the concreteness requirement, even absent additional allegations of harm."). District courts in California have reached the same conclusion when applying its similar statute. *See, e.g.*, *Whittaker v. Tactical*

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 7
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

*USA LLC,* 2024 WL 1855645, at \*6 (E.D. Cal. Apr. 29, 2024); *Lynch v. AML Network Ltd.*, 2021 WL 4453470, at \*5 (C.D. Cal. Sept. 27, 2021).

Of course, standing analysis is not done at the statutory level—courts must "look to the *specific* underlying harm experienced by the plaintiff" to determine whether that "individual plaintiff has suffered" a concrete injury. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). In that analysis, a plaintiff who solicited the emails that allegedly violate CEMA may not have suffered a concrete injury. *Nuri*, No. 25-cv-690, Doc. 56 at 6 n.3; *see also Montes v. Catalyst Brands LLC*, 2025 WL 3485827, at \*3 (E.D. Wash. Dec. 4, 2025)). After all, an invited missive is not an "irritating intrusion" the way an unsolicited one is. *Six*, 129 F.4th at 634 (cleaned up). So in *Nuri*, where the plaintiff "provided her email address to True Religion and" said she "would like to continue receiving truthful information from True Religion regarding its products," there was no injury. No. 25-cv-690, Doc. 56 at 6. But that is not the case here.

### B. Plaintiffs suffered a concrete injury from the receipt of unwanted emails.

In reviewing whether the complaint's allegations establish standing, this Court must draw "all reasonable inferences in favor of" Sirius XM. *DeFiore*, 85 F.4th at 552. Especially given that rule, it is clear from the complaint that, like the plaintiffs in *Brinton*, *Liss*, and *Harbers*, Plaintiffs received unsolicited emails that they allege violated CEMA. So like the plaintiffs in those cases, they have suffered an Article III injury, even though that injury does not satisfy the CAN-SPAM exception's separate injury requirement.

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 8
CASE NO. 2:25-cv-01113-LK

Although Plaintiffs do not specifically allege that the emails were unsolicited, Doc. 31 at 5 n.1, the complaint makes that conclusion inescapable. Plaintiffs explain that Sirius XM receives "contact information of … vehicle buyers and lessees" from automotive dealerships and says that "[e]ven if a consumer never signs up for a paid music plan subscription, Sirius XM will continue bombarding the consumer with marketing emails for years to come." Doc. 1-1, Compl. ¶¶ 52-53. In line with those allegations, both Plaintiffs allege that they did not ask for a free Sirius XM trial, believing it "was a complimentary service." *Id.* ¶¶ 60, 62, 72, 74. And they emphasize that they "did not have any interactions with Sirius XM at any point in time." *Id.* ¶¶ 61, 73. Without an interaction, they could not have solicited the emails. They also accuse Sirius XM of "inundat[ing] them with countless commercial emails." ¶ 65, 77. Welcome correspondence is rarely described as an inundation.

The two statements in the complaint that "[u]nder CEMA, it is irrelevant whether the commercial emails were solicited," are not to the contrary. *Id.* ¶¶ 26, 98. Both appear amidst general summaries of CEMA that simply walk through the many features that make the law so all-encompassing. *See id.* ¶¶ 21-29, 93-102. And neither is connected to any allegations regarding Plaintiffs, who "did not have any interaction with Sirius XM at any point in time" that would have allowed them to solicit the emails they received. *Id.* ¶¶ 61, 73.

Thus, the most natural inference from the complaint—and certainly a reasonable one—is that Plaintiffs allege the kind of "*unsolicited* … emails containing false and misleading subject lines" that satisfy "the injury-in-fact requirement for purposes of standing." *Liss*, 2026 WL 1392327, at *3; *see also Brinton*, 2024 WL

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 9
CASE NO. 2:25-cv-01113-LK

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
206.223.7000 FAX: 206.223.7107

3688589, at *3 ("the recipient of unsolicited emails suffers an injury"); *Harbers*, 415 F. Supp. 3d at 1009. The intrusion they allege from unwanted email advertisements "bears a close relationship to intrusion upon seclusion," just as the intrusion from an unsolicited phone call, text message, or letter does. *Six*, 129 F.4th at 634; *see also Wakefield*, 51 F.4th at 1118.

The other elements of standing follow from those injuries. Sirius XM sent the emails that caused the alleged intrusion, and the harm is redressable by damages. *See Six*, 129 F.4th at 636 (concluding that the remaining standing elements were satisfied because the unsolicited letter "caused the intrusion on Six's privacy" and statutory damages "would redress the intrusion"). So Plaintiffs have Article III standing.

## CONCLUSION

For those reasons, Sirius XM asks that this Court conclude that removal was proper, reach the merits, and dismiss Plaintiffs' claim.

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 10
CASE NO. 2:25-cv-01113-LK

Dated: June 23, 2026

JONES DAY

*s/ Lee A. Armstrong*

Lee A. Armstrong
*Pro Hac Vice*
250 Vesey Street, 34th Floor
New York, NY 10281
Telephone: 212.326.3939
Facsimile: 212.755.7306
laarmstrong@jonesday.com

BALLARD SPAHR LLP

*s/ Tim D. Wackerbarth*

Tim D. Wackerbarth, WSBA No. 13673
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Telephone: 206.223.7000
wackerbartht@ballardspahr.com

*Counsel for Defendant Sirius XM Radio LLC*

I certify that this memorandum contains 2715 words, in compliance with the Court's order.

DEFENDANT'S RESPONSE TO ORDER TO
SHOW CAUSE – 11
CASE NO. 2:25-cv-01113-LK