UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYNTHIA STUTSMAN et al.,<br>Plaintiffs,<br>v.<br>SIRIUS XM RADIO LLC,<br>Defendant. | CASE NO. 2:25-cv-01113-LK<br>ORDER REMANDING CASE |

This matter comes before the Court on Defendant Sirius XM Radio LLC's response to the Court's order to show cause why this case should not be dismissed for lack of subject matter jurisdiction. Dkt. No. 33. Sirius XM's backpedaling in that response conflicts with its prior representations to the Court in its motion to dismiss. It now argues that Plaintiffs Cynthia Stutsman and Michael Peterson have standing so Sirius XM can have its preferred forum, *id.*, while previously urging dismissal because Stutsman and Peterson suffered absolutely no injury at all, Dkt. No. 17 at 5–6, 12–23; Dkt. No. 24 at 6–20. Sirius XM cannot have it both ways. For the reasons stated below, the Court remands this case to Snohomish County Superior Court.

## I. BACKGROUND

This case is a proposed class action against Sirius XM for allegedly sending false and misleading emails in violation of Washington's Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190, and Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86. Dkt. No. 1-1 at 3, 21. Plaintiffs Cynthia Stutsman and Michael Peterson complain that Sirius XM sent emails "advertis[ing] and promis[ing] [a] monthly price for the music plans [that] was lower than the true price that Sirius XM actually charged," because "Sirius XM always failed to include the amount of its invented U.S. Music Royalty Fee which increased the true plan price by 21.4% above the advertised price for the music plans." *Id.* at 9. Neither Stutsman nor Peterson "purchased a Sirius XM music plan subscription or any other subscription from Sirius XM." *Id.* at 15, 17.

For themselves and a class of Washington residents who also "never paid for a Sirus XM subscription," *id.* at 13, Stutsman and Peterson seek an order for Sirius XM "to pay each Plaintiff and each member of the Class statutory damages of $500 for each and every commercial email that Sirius XM transmitted to them on or before June 30, 2024, that contained false or misleading price information in the subject line in violation of CEMA," "attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law," and "such other relief as this Court deems just and proper," *id.* at 25. While Stutsman and Peterson aver that they were "automatically enrolled in free Sirius XM trials," Dkt. No. 1-1 at 12, they do not claim that the emails they received were unsolicited, *see, e.g.*, *id.* at 8 ("[I]t is irrelevant whether misleading commercial emails were solicited."). Their only cause of action is under the CPA, and it is premised on the alleged violations of CEMA. *Id.* at 21–25.

Stutsman and Peterson filed this suit in Snohomish County Superior Court. *Id.* at 2. Sirius XM timely removed the case to this Court, Dkt. No. 1 at 1–2, asserting diversity jurisdiction under

the Class Action Fairness Act ("CAFA"), *id.* at 2–4. It then filed a motion to dismiss based on federal preemption, in part because "Plaintiffs fail to allege injury[.]" Dkt. No. 17 at 20. Considering Sirius XM's representations in its motion and reply, the Court ordered Sirius XM to show cause why this case should not be remanded to Snohomish County Superior Court for lack of subject matter jurisdiction due to lack of Article III injury. Dkt. No. 31. Sirius XM timely filed its response. Dkt. No. 33.

## II. DISCUSSION

"[B]oth the Supreme Court and [the Ninth Circuit] have held that whether or not the parties raise the issue, federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (citation modified). Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Although there is "no antiremoval presumption" for cases removed pursuant to CAFA, the removing party must put forth evidence establishing jurisdiction if "the court questions[] the defendant's allegation[s]." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Moreover, as the party invoking federal jurisdiction, Sirius XM bears the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For an injury in fact to exist, a statutory violation must have "caused [a plaintiff] to suffer some harm that

'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo v. Robins*, 578 U.S. at 338). "[A] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (citation modified). Furthermore, "standing is not dispensed in gross;" rather, standing must be established "for each claim that [plaintiffs] press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

As discussed above, Stutsman and Peterson seek statutory damages "for each and every commercial email that Sirius XM transmitted to them . . . that contained false or misleading price information in the subject line in violation of CEMA[.]" Dkt. No. 1-1 at 25. The Washington Supreme Court has made clear that "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Brown v. Old Navy, LLC*, 567 P.3d 38, 45 (Wash. 2025). However, the legislature's creation of a statutory prohibition or obligation and a cause of action "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]" *TransUnion*, 594 U.S. at 426.

While CEMA does not require that a plaintiff independently establish an injury in fact under Washington law, *see Brown*, 567 P.3d at 45, the Court "cannot treat an injury as 'concrete' for Article III purposes based only on [the legislature's] say-so," because "under Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 426–27 (citation modified). For standing purposes, therefore, an important difference exists between a plaintiff's *statutory* cause of action to sue a defendant over the defendant's violation of state law, and a plaintiff suffering *concrete harm* because of the defendant's violation of state law. *Id.* The Ninth Circuit has

interpreted *TransUnion* to "require[] a court to assess whether an individual plaintiff" claiming harm based on an intangible injury "has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

Despite alleging in its Notice of Removal that this Court has jurisdiction over this case, Dkt. No. 1 at 1–4, Sirius XM argues in its motion to dismiss that Plaintiffs "fail to allege injury," Dkt. No. 17 at 20, and that "Plaintiffs make no effort to show reliance or harm. They can't. Their lone claim depends entirely on CEMA's strict-liability regime," *id.* at 22. Sirius XM adds that "CEMA's prohibition on any false or misleading information in subject lines does not address traditional tortious conduct" and "imposes strict liability without need for injury or reliance." *Id.* at 16–17; *see also id.* at 5 ("CEMA is not limited to traditionally tortious conduct. . . . The mere receipt of an email with an immaterial factual misstatement in the subject line allows the recipient to seek $500 per email in statutory damages."); Dkt. No. 24 at 14 ("Traditional Tort Theories Require Causation and Injury, Which Plaintiffs Do Not Attempt to Plead."). Indeed, Sirius XM asks the Court to "reject Plaintiffs' claim" because it does not show "reliance or injury[.]" Dkt. No. 17 at 23; *see also id.* at 6 ("[Plaintiffs] do not claim to have even opened one of the emails, let alone that they would not have done so if the email subject line said $6.07 instead of $5. And they expressly disavow having actually purchased a SirusXM subscription."); Dkt. No. 24 at 17 ("Plaintiffs had to plead causation and injury, and they made no effort to do so. Their claim should be dismissed.").

In response to the Court's order requiring Sirius XM to show cause why the case should not be remanded based on the above representations, which essentially concede that Stutsman and Peterson lack Article III standing, Sirius XM argues that Stutsman and Peterson merely failed to allege injury sufficient under the "distinct" standard required to avoid federal preemption, Dkt. No. 33 at 6, but *did* allege an Article III injury through the receipt of "*unsolicited* emails that

allegedly violate [CEMA]," *id.* at 5 (emphasis added).[1] Thus, according to Sirius XM, "Plaintiffs can and do have an injury in the Article III sense even as they suffered no injury in the CAN-SPAM sense." *Id.*

Sirius XM's new theory that Stutsman and Peterson received unsolicited emails is not supported by the record,[2] and even if it were, it would not support Article III standing because it misconstrues CEMA and misapprehends the injury that provides the basis for Plaintiffs' cause of action. Specifically, contrary to Sirius XM's argument that the Washington legislature "elevated" the "harm of receiving an unwanted email" into a cause of action, Dkt. No. 33 at 7, CEMA does not prohibit unsolicited emails. Instead, it prohibits emails that misrepresent the sender's identity or contain false or deceptive subject lines. *See* Wash. Rev. Code §§ 19.190.020–.030; *Brown*, 567 P.3d at 41. Unsurprisingly, then, unsolicited email is not the harm for which Plaintiffs seek redress; rather, they are suing over allegedly false and deceptive subject lines. *See generally* Dkt. No. 1-1. They ask for statutory damages not "for each and every email that Sirius XM transmitted to them," but for each email "*that contained false or misleading price information in the subject line*[.]" Dkt. No. 1-1 at 25. And the prospective class includes consumers who "received emails from Sirius XM prior to July 1, 2024, *which contained false or misleading pricing information in the subject line*"—there is no requirement that those emails were unsolicited. Dkt. No. 1-1 at 5 (emphasis added). "Whether an injury is redressable depends on the relationship between the judicial relief requested and the injury suffered," *California v. Texas*, 593 U.S. 659, 660 (2021) (citation

---

[1] Sirius XM does not argue that Article III injury is conferred by false or misleading information contained in a subject line in violation of CEMA. *See generally* Dkt. No. 33; *see also* Dkt. No. 17 at 5 (to violate CEMA, an email "does not need to cause the recipient an ounce of harm").

[2] The complaint suggests that Plaintiffs were amenable to some relationship with Sirius XM via their automakers, with Stutsman understanding that her leased Audi car "came with a factory-installed Sirius XM satellite radio" and that her lease provided a "Sirius XM trial" as a "complimentary service." Dkt. No. 1-1 at 15. Similarly, Peterson "purchased a Kia Soul that came with a factory-installed Sirius XM satellite radio," which he understood provided a "Sirius XM trial" as "a complimentary service." *Id.*at 17. Sirius XM acknowledges that "Plaintiffs do not specifically allege that the emails were unsolicited[.]" Dkt. No. 33 at 13 (citing Dkt. No. 31 at 5 n.1).

modified), and Sirius XM's invented injury of unsolicited emails cannot be redressed by CEMA. The mismatch between Sirius XM's newfound injury and the judicial relief requested here is fatal to its revisionist argument that Article III standing has been established. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 25 (2025) (The plaintiff—not the removing defendant—"is 'the master of the complaint,' and therefore controls much about her suit," including "which substantive claims to bring against which defendants." (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–399 (1987))); *id.* at 38–39 ("The appropriateness of federal jurisdiction—or the lack thereof" depends "on the substance of the suit—the legal basis of the claims"; "the rule that jurisdiction follows the operative pleading serves [the] critical function" of "ensur[ing] that the case, *as it will actually be litigated*, merits a federal forum." (emphasis added)).

This Court follows an ever-growing list of decisions finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury. *See, e.g.*, *Aronson v. 5 Star Apparel LLC*, No. C25-2691JLR, 2026 WL 2332885, at *2 (W.D. Wash. Aug. 4, 2026) ("[E]ven if Mr. Aronson has plausibly alleged that 5 Star violated CEMA, he cannot pursue his claim in this court because he failed to allege an Article III injury-in-fact."); *Hutton v. Papa John's USA, Inc.*, No. C25-1922-KKE, 2026 WL 2210133, at *3 (W.D. Wash. July 31, 2026) ("Because Hutton's complaint does not include allegations identifying any real or appreciable harm that he suffered as a result of Papa John's sending him emails, the Court finds that he has failed to state a sufficient injury in fact to satisfy Article III."); *Carter v. Vineyard Vines, LLC,* No. CV ELH-25-3178, 2026 WL 1429258, at *26 (D. Md. May 21, 2026) ("[M]ere receipt of emails with misleading or false subject lines does not, by itself, constitute a concrete injury sufficient to confer Article III standing."); *Crooks v. Coty DTC Holdings, LLC*, No. CV RDB-26-0078, 2026 WL 1265422, at *6 (D. Md. May 8, 2026)

("[Removing Defendant] cannot meet its burden of proving that [Plaintiff] has Article III standing to support federal jurisdiction because the Complaint [asserting violation of an analogous Maryland law] alleges statutory harm alone without any concrete harm to [Plaintiff] or any other member of the putative plaintiff class."); *Nuri v. True Religion Apparel*, No. 2:25-CV-00690-LK, 2026 WL 864886, at *3 (W.D. Wash. Mar. 30, 2026).

For these reasons, the Court holds that Sirius XM has failed to carry its burden on removal to establish subject matter jurisdiction. Therefore, the Court must remand this case. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III.").

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The above-captioned case is REMANDED to the Snohomish County Superior Court;
2. all pending motions are DENIED as moot;
3. the Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Snohomish County Superior Court;
4. the Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Snohomish County Superior Court; and
5. the Clerk of Court shall CLOSE this case.

Dated this 20th day of August, 2026.

Lauren King
United States District Judge